IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                                           Criminal Action No. **3:22cr55**

**O'NEIL GAYLE,**

    Petitioner.

## MEMORANDUM OPINION

O'Neil Gayle, a federal inmate proceeding *pro se*, filed this 28 U.S.C. § 2255 Motion ("§ 2255 Motion," ECF No. 30). (ECF No. 30.) Mr. Gayle demands relief on the following grounds:[1]

> Claim One      Movant's guilty plea not knowing voluntary, and intelligently made with a full and complete understanding of the consequences.
> Prior to pleading guilty, counsel advise[d] Movant that he was statutorily eligible for the First Step Act and if Movant programmed and remained incident free and remained at a low-level risk of recidivism Movant would be able to earn 15-days a month earned time credits which would be applied towards Movant's sentence. Counsel not only informed Movant of this but also Movant's mother, child's mother, fiancée and others that with the benefits of the First Step Act, Movant would probably do no more than 6-years in prison. During my initial team review, Movant's assigned Case Manager informed Movant that he was not eligible to earn time credits pursuant to the First Step Act because of the nature of the charge[d] offense. On February 7, 2023, Case Manager Bullock memorialized Movant's ineligibility. See Exhibits A & B(Affidavits). Movant stands prejudice[d] as he was misinformed by an officer of the Court as to the direct consequences of his plea. Movant based his decision to plead guilty based on false promises to forego both his Fifth and Sixth Amendments rights.

(*Id.* at 4 (second alteration added).)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation in the quotations from the parties' submissions.

    Claim Two    Ineffective Assistance of Counsel – Counsel failed to adequately research the laws and facts before persuading Movant to plead guilty.

    Counsel provided Movant with material misrepresentation concerning Movant's sentencing exposure in persuading and forming the catalyst by which Movant waived his constitutional rights to have a jury determine all the elements of the charged crime beyond a reasonable doubt. Had counsel conducted an iota of legal research into the criteria for First Step Act eligibility, counsel would have discovered that Movant would be statutorily ineligible to receive First Step Act Time Credits and negotiated a plea wherein Movant could have pled guilty to the distribution of heroin, cocaine hydrochloride and cocaine base wherein Movant could have receive[d] the same sentence.

(*Id.* at 5.)

As factual support for these claims, Mr. Gayle submitted an affidavit wherein he states, in pertinent part:

    8. In persuading me to plead guilty, Attorney Austin advised me that I was eligible for the First Step Act and after two assessment[s], if I remain at a minimum or low recidivism level, I would be able to earn 15-days a month . . . which would greatly reduce my incarceration period.

    9. Based on counsel's advice and explanation about the First Step Act, I decided to plead guilty calculating that at most I would spend about 6 years in prison by maintaining clear conduct and programming.

    10. At my initial team at Fort Dix FCI my assigned Case Manager Mr. Bullock informed me verbally that I was statutorily ineligible to earn and receive time credits under the First Step Act. Later, Mr. Bullock memorialized the basis for my ineligibility.

    11. That I realize[d] for the first time that Attorney Austin, an officer of the Court, had provided me material misinformation that persuaded me to plead guilty and waiving my constitutional right.

    12. That if not for Attorney Austin's false promises I would have exercised my constitutional rights and proceeded to trial, confronting my accuser and holding the government to their burden to prove my guilt beyond a reasonable doubt.

(ECF No. 30-2, at 3.) Mr. Gayle has submitted documentation, from his place of incarceration, indicating that he was ineligible for First Step Act credits because the amount of fentanyl in his case exceeded 40 grams. (ECF No. 30-1, at 2.)

As explained below, Mr. Gayle's current claims are foreclosed by his sworn statements during his guilty plea proceedings.

## I. Pertinent Factual and Procedural History

On May 4, 2022, Mr. Gayle was charged in a five-count Indictment with: distribution of 100 grams or more of a mixture and substance containing a fentanyl analogue and fentanyl (Count One); distribution of 100 grams or more of a mixture and substance containing a detectable amount heroin (Count Two); distribution of 40 grams or more of a mixture and substance containing a detectable amount fentanyl (Count Three); possession with intent to distribute 40 grams or more of a mixture and substance containing a detectable amount of fentanyl (Count Four); and possession with intent to distribute of a mixture and substance containing a detectable amount cocaine (Count Five). (ECF No. 1, at 1–3.) On June 30, 2022, Mr. Gayle agreed to plead guilty to Count One. (ECF No. 17, at 1.)

In the Statement of Facts that accompanied his Plea Agreement, Mr. Gayle agreed that if the matter had proceeded to trial, "the United States would have proven the following facts beyond a reasonable doubt," (ECF No. 18, at 1):

> 1. On or about September 17, 2021, in the Eastern District of Virginia and within the jurisdiction of this Court, the defendant did knowingly and intentionally distribute 100 grams or more of a mixture and substance containing a fentanyl analogue, to wit: Para-fluorofentanyl, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance, as set forth in Count One of the pending Criminal Indictment.
> 2. On or about September 17, 2021, members of the Richmond Police Department, along with members of the Baltimore Police Department and other law enforcement agencies utilized a confidential source (hereafter, CS) to purchase a distribution quantity of drugs from GAYLE.
> 3. The CS, acting under the direction of law enforcement, arranged to meet with GAYLE at a prearranged location in the Eastern District of Virginia to purchase the narcotics from GAYLE. Prior to and after the controlled purchase, the CS was searched for contraband (drugs) and cash with negative results. GAYLE and the CS then met at a pre-arranged location at which time GAYLE handed the CS approximately five ounces of suspected fentanyl, and the

CS handed GAYLE $7,000 in cash. After GAYLE distributed these drugs to the CS, surveillance teams observed GAYLE leave the area.

4. On or about October 6, 2021, GAYLE once again met with a CS at a predetermined location in the Eastern District of Virginia. This time, GAYLE sold the CS approximately five ounces of heroin, a Schedule I controlled substance. In addition, on this same date, GAYLE sold the CS two "ghost"[2] guns. Prior to and after this transaction, the CS was searched for contraband (drugs and firearms) and United States currency with negative results. The CS was provided with $7,000 as payment to GAYLE for the heroin, and $2,200 as payment to GAYLE for the two ghost guns (each gun was sold for $1,100). The CS handed GAYLE the agreed upon United States currency for the drugs and firearms, and GAYLE handed the CS a distribution quantity of heroin and two ghost guns.

5. Both of the firearms that GAYLE sold to the CS on October 6, 2021 were 9mm semi-automatic pistols. Gayle included 9 mm Glock magazines with each firearm, at least one of which was high capacity (i.e. capable of accepting more than 28 rounds of ammunition). Neither of the firearms had serial numbers, and each had been made using a 3-D printer. Both firearms were subsequently tested and found to be fully functioning and operable.

6. On November 18, 2021, GAYLE and a CS once again agreed to meet at a predetermined location. At this time, GAYLE distributed approximately 5 ounces of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance. Prior to and after this transaction, the CS was searched for contraband and United States currency with negative results. The defendant handed the CS the agreed upon quantity of narcotics, and in exchange, the CS handed GAYLE $7,000 in United States currency.

7. On December IS, 2021, GAYLE was lawfully stopped by law enforcement and was in possession of approximately 400 grams of Fentanyl, a Schedule II controlled substance; just over 56 grams of Cocaine Base, commonly known as "crack," a Schedule II controlled substance; and just over 7 grams of cocaine hydrochloride, a Schedule II controlled substance.

8. The drugs that were distributed by the defendant during the course of this investigation, as well as the drugs that were possessed by the defendant with the intent to distribute were sent to the Virginia Department of Forensic Science for analysis with the results of the analyses set forth in paragraph 9.

9. The parties stipulate and agree that the defendant distributed and/or possessed with the intent to distribute the following narcotics between September 17, 2021 and December 15, 2021 as described herein:

| DATE | SUBSTANCE | NET WEIGHT |
|---|---|---|
| September 17, 2021 | Para-Fluorofentanyl and Fentanyl | 148.12 grams |
| October 6, 2021 | Fentanyl | 148.98 grams |
| November 18, 2021 | Heroin | 140.55 grams |
| December 15, 2021 | Fentanyl | 401.43 grams |

---

[2] A ghost gun is a firearm that is not marked with a serial number so there is no way to track their origins or their owners. They are often made utilizing a 3-D printer.

| | | |
|---|---|---|
| | Cocaine Base | 58.68 |
| | Cocaine Hydrochloride | 7.01 |

10. The parties further stipulate and agree that the quantities of narcotics as set forth in this Statement of Facts (to wit: Para-fluorofentanyl; fentanyl; cocaine base; and cocaine hydrochloride), are quantities that are consistent with distribution and the intent to distribute and inconsistent with personal use.

11. The parties also stipulate and agree that the firearms that were sold by the defendant on October 6, 2021 are firearms within the meaning of the law in that they were designed to expel a projectile by means of an explosive; that each of the firearms sold by the defendant was operable, that neither firearm had a serial number (i.e. they were ghost guns), and that one of the firearms was capable of accepting a high capacity magazine (i.e. more than 16 rounds). . . .

(*Id.*, at 1–4.)

Mr. Gayle acknowledged that he faced a mandatory minimum term of imprisonment of ten years and a maximum term of imprisonment of life. (ECF No. 17 ¶ 1.) Mr. Gayle further acknowledged that any estimate of the sentence he may have received from counsel or the United States "is a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court. (*Id.* ¶ 4.) The Plea Agreement provided that:

> the parties have agreed to recommend to the Court the imposition of a sentence of 136 months based on an anticipated adjusted Offense Level of 29, and anticipated Criminal History of Category IV, which leads to a guideline range of 121 to 151 months. This recommendation to the Court is at the mid-point of the guideline range.

(*Id.* ¶ 4.) The Plea Agreement concludes with the following statement:

> This written agreement constitutes the complete plea agreement between the United States, the defendant, and the defendant's counsel. **The defendant and the defendant's attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in writing in this Plea Agreement or any associated documents filed with the Court, to cause the defendant to plead guilty.** Any modification of this Plea Agreement shall be valid only as set forth in writing in a supplemental or revised plea agreement signed by all parties.

(*Id.* ¶ 14.) Following a sentencing hearing on October 19, 2022, the Court sentenced Mr. Gayle to 136 months' imprisonment. (ECF No. 28, at 2.)

## II. Analysis

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Any assertion by Mr. Gayle that he would not have pleaded guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70.

In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). In light of the strong presumption of verity that attaches to a petitioner's declarations during his plea proceedings, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted). Thus, the Fourth Circuit has admonished that "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221–22. No circumstances exist here that would lead the Court to consider Mr. Gayle's prior sworn statements as other than truthful.

### A. Claim One

Here, in Claim One, Mr. Gayle now claims that his plea was largely predicated upon the erroneous assurance from his attorney that he would receive sentence credits of fifteen days for every thirty days served. (ECF No. 30-2, at 3.) This statement is "'palpably incredible' and 'patently frivolous or false'" in light of Mr. Gayle's sworn assurances during his plea proceeding wherein he assured the Court that no external promises or predictions about his sentence had caused him to plead guilty. *See Lemaster*, 403 F.3d at 221 (citations omitted). In addition to the statements recited above, Mr. Gayle provided the following assurances during his Rule 11 proceedings:

> THE COURT: All right. Does the plea agreement that we talked about earlier contain the complete agreement that you have with the prosecution? In other words, are there any side deals that are not written down in this plea agreement?
> THE DEFENDANT: None, at all, sir
> THE COURT: Has anybody made any promises to you in order to get you to plead guilty?
> THE DEFENDANT: Not at all, sir
>    . . . .
> THE COURT: All right. Are you pleading guilty because [you] are in fact guilty?
> THE DEFENDANT: Yes.
> THE COURT: Do you believe it is in your best interest to plead guilty instead of going to trial?
> THE DEFENDANT: Yes, sir.
> THE COURT: Again, I remind you there is no agreement with respect to what sentence you will get in this case. While the lawyers will recommend a 136-month sentence, which is 11 years and four months, while they will recommend that, I am not bound b[y] that. Do you understand that?
> THE DEFENDANT: Yes, sir.
> THE COURT: So, if you come back and I just, decide to give you a worse sentence than the lawyers recommend, do you understand that you can't then change your plea to not guilty?
> THE DEFENDANT: I understand, sir.

(ECF No. 32, at 17–18.) Additionally, Mr. Gayle acknowledged that the facts set forth in the Statement of Facts, regarding his distributing fentanyl, heroin, cocaine, and crack cocaine to a government informant, were true. (*Id.*, at 15.)

Mr. Gayle fails to demonstrate that, but for the alleged erroneous advice from counsel, he would have not pled guilty and insisted on going to trial. Mr. Gayle assured the Court that there were no predictions or promises outside the Plea Agreement that caused him to plead guilty. Mr. Gayle further acknowledged that he could receive a sentence of up to life in prison by pleading guilty. Further, Mr. Gayle acknowledged that he was in fact guilty of the charged crime and that the Government could prove that crime, beyond a reasonable doubt, had the matter proceeded to trial. Given these facts, Mr. Gayle fails to demonstrate prejudice. Claim One will be DISMISSED.

**B. Claim Two**

In Claim Two, Mr. Gayle apparently faults counsel for failing to negotiate a plea agreement that would have allowed him to plead guilty to charges relating to the distribution of heroin, cocaine hydrochloride, and cocaine base, but that would have allowed him to earn sentence credits under the Fair Sentencing Act at a rate of fifteen days for every thirty days served. (ECF No. 30, at 5.) This claim fails on multiple fronts.

First, for many of the reasons stated above, Mr. Gayle cannot demonstrate prejudice. Mr. Gayle's contention that sentencing credits played a pivotal role in his decision to plead guilty is foreclosed by his statements during his Rule 11 proceedings.

Second, Mr. Gayle cannot demonstrate any reasonable probability that such a plea offer could be negotiated. Mr. Gayle fails to direct the Court to any evidence suggesting that the Government was willing to drop the fentanyl charges and allow him to plead guilty only to offenses related to the distribution of heroin, cocaine hydrochloride, and cocaine base. *See Lafler v. Cooper*, 566 U.S. 156, 168 (2012) (observing a defendant cannot demonstrate prejudice with respect to a plea offer "[i]f no plea offer is made"); *United States v. Thompkins*, No. 3:08CR339, 2014 WL 3895556, at *8 (E.D. Va. Aug. 8, 2014) (citation omitted). Claim Two will be DISMISSED.

### III. Conclusion

Mr. Gayle's claims and the action will be DISMISSED. The § 2255 Motion (ECF No. 30) will be DENIED. A certificate of appealability will be DENIED.[3]

An appropriate Order shall accompany this Memorandum Opinion.

---

[3] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Mr. Gayle has not satisfied this standard.

Date: 9/11/25
Richmond, Virginia

/s/ JAG